Argued and submitted October 6, 1981, affirmed as modified April 27, 1982

MADDOX,
*Petitioner on Review,*
*v.*
CLACKAMAS COUNTY SCHOOL
DISTRICT NO. 25 et al,
*Respondents on Review.*
(No. 78-5-275, CA 17281, SC 27822)

643 P2d 1253

Paul J. Kelly, Jr., Portland, argued the cause for petitioner. With him on the briefs was Glasgow, LaBarre & Kelly, P.C., Portland.

James C. Tait, Oregon City, argued the cause for respondent. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

TANZER, J.

## TANZER, J.

This is a claim in contract and under 42 USC § 1983 brought by an elementary school teacher whose employment was terminated one month into his one school-year term as a probationary teacher. He seeks damages from the employer school district for breach of contract and from the school district and the school board members individually for deprivation without due process of law of his property interest in continued employment. The trial court dismissed the claim and the Court of Appeals affirmed. There are two issues: The first is whether a probationary teacher whose contract is expressly subject to ORS 342.835 has a claim for breach of contract to challenge a termination under that statute during the term of his contract. The second is whether a probationary teacher hired for a fixed term has a "property" interest in his job of which he cannot be deprived without due process of law, and if so, what process is due.

The facts are stipulated. Plaintiff was hired for the 1976-77 school year. About one month into the school year, the school principal informed plaintiff by letter that he intended to recommend plaintiff's dismissal to the district school board at a special meeting to be held two days later.[1] The letter listed the reasons for the principal's recommendation, informed plaintiff that he would be welcome at the meeting and that he would be afforded an additional hearing "depending upon the direction the board takes."

At the meeting, plaintiff characterized the charges against him as untrue, exaggerated and not grounds for dismissal, but he did not comment further on the specific charges. He asked the board to delay its decision in order to give him and his lawyer an opportunity to prepare an adequate response. He requested a public hearing, at which he would be allowed to call and cross-examine witnesses. The board denied plaintiff's request to continue the proceedings and, following an executive session, voted to terminate his employment effective immediately. Plaintiff

---

[1] Plaintiff claims he received the notice on September 29, 1976, the day of the school board meeting. The school board contends he received it on September 27. For the reasons discussed in this opinion, this dispute is not significant either to plaintiff's contract claim or his § 1983 claim.

was informed by letter that he was dismissed as of the date of the meeting.

Upon plaintiff's request, an informal public hearing was held several weeks later. Witnesses were not sworn, but plaintiff was apparently free to question the principal who recommended his dismissal and to have witnesses speak in his behalf. Afterward, the board voted to confirm its decision to terminate plaintiff's employment.

Plaintiff then brought this action for damages for breach of his employment contract, and for deprivation of his property interest in his one-year contract without due process of law.[2] Defendants moved to dismiss and for summary judgment. The circuit court dismissed both causes of action because plaintiff had a statutory remedy under ORS 342.835(3), *infra*, by which to challenge the board's decision. It is not clear whether the court viewed the statutory remedy as being exclusive or as one which must be exhausted before other remedies would be available. At any rate, the court concluded that the only remedy then available to plaintiff was to pursue his statutory right of appeal from the board's decision. Summary judgment was denied.

The Court of Appeals affirmed the trial court. It held that the contract claim was properly dismissed because plaintiff may not avoid the limited statutory review granted under ORS 342.835(3) by bringing an action for breach of contract. In addition, it held that the § 1983 claim was properly dismissed because plaintiff did not have a property interest in his contract which was protected by the United States Constitution or the Oregon Constitution.

We allowed review to clarify the remedies available to a probationary teacher who is dismissed during the term of the contract. On somewhat different reasoning, we affirm the Court of Appeals.

<h2 style="text-align:center">THE CONTRACT CLAIM</h2>

The employment relationship between school district and teacher has many aspects, each subject to various

---

[2] The trial court granted summary judgment for defendants on a third cause of action against the school principal. Plaintiff does not challenge this judgment on appeal.

sources of regulation, such as statute, (*e.g.* ORS ch 342), administrative rules, and individual or collective contracts. Work hours, for example, may be determined administratively. Duties to be performed and compensation for performance are normally controlled by express or implied contract.

The aspect involved in this case is termination. We have held that in the absence of agreement or other regulation (and disregarding constitutional requirements), either the employer or the employee may terminate employment at any time for any reason, *Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 611 P2d 281 (1980), *Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 655, 576 P2d 356 (1978), *Nees v. Hocks,* 272 Or 210, 216, 536 P2d 512 (1975).[3] Here, those prerogatives are restricted. The duration of employment is governed by both contract and statute. The term of employment is established by contract as one year but, as the contract acknowledges, that term is subject to termination pursuant to statute.

The contract specified the parties, school year, salary and required teacher certification. It then listed several "conditions of employment," including:

> "It is hereby agreed between the District School Board of School District No. 25, Clackamas County, State of Oregon, and the undersigned Teacher that:
>
> \* \* \* \* \*
>
> 4. This contract is subject to the laws of the State of Oregon, the duly adopted rules of the school district and the State Board of Education."

Under the "laws of the State of Oregon" to which this contract was subject, the school district was not free to terminate employment of probationary teachers such as plaintiff at will.[4] Termination of probationary teachers'

---

[3] We are mindful of suggestions to judicially qualify employers' discretion to terminate, *see* Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith,* 93 Harv L Rev 1816 (1980), or to do so by legislation. C. Summers, *Individual Protection Against Unjust Dismissal,* 62 Va L·Rev 481 (1976). This case does not require that we reexamine the existing rule.

[4] This is to be distinguished from the extensive substantive and procedural protection from termination required for permanent teachers by the Fair Dismissal Law, ORS 342.805 to 342.955. Plaintiff is not a "permanent teacher" as that term is used in the statute.

employment was governed by ORS 342.835, which at all pertinent times provided:

"(1)  The district board of any fair dismissal district may discharge or remove any probationary teacher in the employ of the district at any time during a probationary period for any cause deemed in good faith sufficient by the board. The probationary teacher shall be given a written copy of the reasons for dismissal, and upon request shall be provided a hearing thereon by the board, at which time the probationary teacher shall have the opportunity to be heard either in person or by a representative of the teacher's choice.

\* \* \* \* \*

"(3)  If an appeal is taken from any hearing, the appeal shall be limited to:

(a)  The procedures at the hearing;

(b)  Whether the written copy of reasons for dismissal required by this section was supplied; and

(c)  In the case of nonrenewal whether notice of non-renewal was timely given." (*See* n 5, *post.*)

Under that statute, school districts were authorized to dismiss probationary teachers for any cause their board "in good faith" deemed sufficient. The probationary teacher is entitled to written reasons for the dismissal and, upon request, a hearing by the board. The statute also provides for an appeal from the hearing. In *Henthorn v. Grand Prairie School Dist.,* 287 Or 683, 601 P2d 1243 (1979), we construed ORS 342.835 to provide that the appeal was by writ of review, which review was limited to the procedures used in the dismissal process.[5] The intent of ORS 342.835 was to give to probationary teachers a limited measure of procedural protection from arbitrary termination, but to

---

[5] The *Henthorn* construction was later codified, *see* Or Laws 1981, ch 323, and now appears as ORS 342.835(3):

"If an appeal is taken from any hearing, the appeal shall be to the circuit court for the county in which the headquarters of the school district is located and shall be limited to the following:

(a) The procedures at the hearing;

(b) Whether the written copy of reasons for dismissal required by this section was supplied; and

(c) In the case of nonrenewal, whether notice of nonrenewal was timely given."

leave the substantive determination to terminate with the school districts, to allow flexibility in probationary teacher decisions and to avoid embroilment in extended termination procedures.[6]

In sum, the contract provides for a contractual term of employment subject to statutory termination provisions. Termination is not elsewhere dealt with in the contract. Although the contract is for a specified term, it does not purport to eliminate or modify the controlling effect of ORS 342.835. (We need not consider whether that can lawfully be done by contract.) This contract purports only to jointly acknowledge that the terms of the agreement of the parties are subject to state laws, of which ORS 342.835 governing termination is one. In other words, termination grounds and procedures are governed by a source other than the contract and the contract notes the existence and controlling effect of that other source.

Those interests of the parties which exist by virtue of the contract (*e.g.,* compensation) may be protected by contract remedies. Plaintiff's freedom from improper termination, however, does not arise from the contract. That interest exists by virtue of the statute. His remedies also exist by virtue of the statute. The contract only acknowledges that its provisions (*e.g.,* term) are "subject to," among other things, the termination provisions of ORS 342.845. No additional contract right or remedy to enforce the statute is created by the "subject to" provision.

Plaintiff argues that we should construe ORS 342.835 to allow for alternative remedies because the statutory remedy is inadequate. Specifically, he argues that we should recognize a contract remedy because a probationary teacher who is successful in the writ of review proceeding may not be awarded damages. Statutes need not create a complete remedy for vindication of statutorily created interests, *see,* for example, ORS ch 656, the Workers' Compensation Act, and where they do not, it is not for the courts

---

[6] *See*˙ Minutes, Senate Education Committee, April 15, 1975, pp 2-4. For example, see the testimony by Jon Danielson of the Oregon Education Association, Minutes, Senate Education Committee, April 15, 1975, p 3. *See also* Exhibit L, House Committee on Labor and Business Affairs, May 22, 1975; Testimony by the Oregon School Boards Association.

to fill the statutory gaps. We note, however, had the termination been set aside on writ of review, the reviewing court was authorized to award "restitution," ORS 34.100. Under the present statute, a teacher would have a claim for relief at least for compensation under a contract for the period of employment prior to a proper termination. We need not examine the full scope of contract remedies in that situation. Here, it suffices to say that plaintiff has remedies and there is no basis for us to add to the statutory remedies for that purpose.

Plaintiff's first cause of action for breach of contract was properly dismissed.

### THE § 1983 CLAIM

Plaintiff's second cause of action, brought against the school district and the individual board members, alleged that the procedures by which he was dismissed deprived him of his property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.[7] He seeks damages under 42 USC § 1983.[8]

---

[7]

"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law;"

Plaintiff further alleged that the same procedures which he claims to fall short of due process of law under the federal constitution also denied him rights guaranteed by Or Const, Art I, § 10. That section provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

On its face, Art I, § 10, guarantees a legal remedy after some injury has been done to an interest falling within its coverage, not a particular administrative procedure in advance of such an injury. This court declined to give the section a pretermination procedural effect independent of the Fourteenth Amendment in *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976).

In addition, although plaintiff does not press the argument on appeal, his complaint alleged that he was deprived of "liberty" without due process of law. The United States Supreme Court has found a liberty interest implicated for purposes of the Due Process Clause where the individual's "good name, reputation, honor or integrity" is at stake. *Board of Regents v. Roth,* 408 US at 573. Plaintiff has not pointed to any charge by the school board which reflects adversely on these qualities. The charges against him generally involved his punctuality and failure to meet deadlines. Whatever the confines of a constitutionally protected liberty interest, these charges are not the sort that implicate that interest.

[8] 42 USC § 1983 provides:

■ Defendants raise two procedural defenses. They argue first that the court should require plaintiff to exhaust the available state remedy by seeking a writ of review before bringing his § 1983 claim. As we have noted, plaintiff's only available state remedy was by writ of review to the circuit court. Assuming plaintiff could establish a violation of his constitutional rights in that proceeding, he could not necessarily be awarded the full scope of damages awardable in a § 1983 suit. Therefore, resort to a § 1983 action would eventually be necessary. In addition, the federal courts have not required exhaustion of state judicial remedies before hearing a § 1983 claim. *See, Steffel v. Thompson,* 415 US 452, 472-473, 94 S Ct 1209, 39 L Ed 2d 505 (1974); *Monroe v. Pape,* 365 US 167, 183, 81 S Ct 473, 5 L Ed 2d 492, 502 (1961); *cf., McNeese v. Board of Education,* 373 US 668, 671-674, 83 S Ct 1433, 10 L Ed 2d 622 (1963) (state administrative remedy need not be exhausted). Although the same considerations may not apply when the suit is brought in state court, given the limited nature of the state remedy provided by ORS 342.835(3), we will not require exhaustion in this case.

■ A § 1983 violation comes under the Tort Claims Act. Defendants argue that plaintiff's claim is barred by his failure to give timely tort claims notice. ORS 30.265(1), 30.275(2)(b). We need not decide whether a state can impose such a statutory notice requirement on a § 1983 action. The statute requires notice within 180 days after the alleged injury. Plaintiff gave notice within 180 days of his post-termination hearing, but not within 180 days of his dismissal. His alleged injury occurred when he was denied due process of law. Especially in the context of dismissal from public employment, whether plaintiff was denied due

---

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In his second cause of action plaintiff also sought damages for deprivation of procedural rights secured to him by ORS 342.835. As we have already held, plaintiff was afforded all procedural rights which the statute provides him. This portion of the complaint was properly dismissed.

process depends upon the adequacy of the pre- and post-termination hearings taken together. If plaintiff was injured, the injury did not occur until the post-termination hearing was held. Therefore, plaintiff's tort claim notice was timely. We turn now to the merits of plaintiff's claim.

In examining plaintiff's claim under the Due Process Clause, the threshold inquiry is whether plaintiff has a "property" interest in the remainder of his one-year contract. If, as the Court of Appeals held, he does not, then the Due Process Clause is not applicable and plaintiff has suffered no denial of his constitutional rights. If he does, the next inquiry is whether the statutory procedure by which plaintiff was dismissed was constitutionally sufficient.

Property interests are not created or defined by the federal constitution, but by "existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972). In this case, plaintiff's property rights are defined by a contract subject to state law. He was hired for a fixed one-year term. He had a contractual right to serve that term, subject to the board's good faith decision to dismiss him. He does not serve entirely at the board's pleasure, because the obligation to act only in good faith is a statutory and a contractual limitation on the board's authority. He has, in the words of the United States Supreme Court, a "legitimate claim of entitlement" under state law to keep his position for one year, or until the board decides in good faith to dismiss him. *Board of Regents v. Roth,* 408 US at 577.

■ The United States Supreme Court cases which have found a property right in public employment have involved individuals who could be dismissed only for "cause." *Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974); *Perry v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972); *cf., Bishop v. Wood,* 426 US 341, 96 S Ct 2074, 48 L Ed 2d 684 (1976) (under state law, plaintiff's employment was terminable at will). Here the statute, and therefore the contract, authorize defendants to

dismiss plaintiff for "any cause" so long as the dismissal is in good faith. ORS 342.835(1). "Good faith" embodies a different standard than "cause" for dismissal, but the nature of the standard is sufficient to give rise to a property interest protected by due process. *Board of Regents v. Roth,* 408 US at 570-571. State law defines the interest, but federal constitutional law determines whether an underlying property interest "rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft,* 436 US 1, 9, 98 S Ct 1554, 56 L Ed 2d 30 (1978). Because plaintiff has a contract for a fixed term, and because he cannot be dismissed except in good faith, he has a property interest in employment for the remainder of his contract term of which he cannot be deprived without due process of law.[9] *See, Vanelli v. Reynolds School District No. 7,* 667 F2d 773, 777 (9th Cir 1982).

Unlike the threshold question of whether a property right exists, the question of what process is due turns partly on the weight of the interests at stake. Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 US 886, 895, 81 S Ct 1743, 6 L Ed 2d 1230 (1961) (quoting *Joint Anti-Fascist Committee v. McGrath,* 341 US 123, 162, 71 S Ct 624, 95 L Ed 817 (1951)). The specific requirements of due process are "flexible" in that "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer,* 408 US 471, 481, 92 S Ct 2593, 33 L Ed 2d 484 (1972). Determination of the adequacy of the procedures employed requires consideration of the governmental and private interests that are affected, as well as the probability that the resulting deprivation will be erroneous. As the United States Supreme Court put it,

"* * * identification of the specific dictates of due process generally requires consideration of three distinct

---

[9] The Court of Appeals held that probationary teachers do not have a property interest in their jobs, citing *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 511 P2d 854, *rev den* (1973), *cert den* 417 US 919 (1974), and *Davis v. Oregon State University,* 591 F2d 493 (9th Cir 1978). Those cases dealt with nonrenewal of a probationary teacher's contract rather than dismissal during a fixed term contract. The distinction is significant in determining whether a property interest exists.

factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation omitted.]" *Mathews v. Eldridge,* 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18, 33 (1976).

In this case, plaintiff's interest is obviously in employment for the duration of his one school-year contract. The defendants' interest is in expeditious removal of undesired probationary teachers. We cannot say that one of these interests "outweighs" the other, for each is significant to the parties involved. For resolution of this issue we focus on the "risk of erroneous deprivation" of plaintiff's interest through the procedures used, bearing in mind that plaintiff can be dismissed for any cause whatsoever, as long as the board acts in good faith. The weight of plaintiff's employment interest bears on the risk of erroneous deprivation through the procedures used, because the more discretion the board has, the less likely it will do something it has no discretion to do.

■    Here, plaintiff was given written notice of the reasons for his dismissal, and an opportunity to be heard informally before the board acted. After his dismissal, he was given a public hearing before the board, at which he was represented by counsel and had opportunity to question the principal who recommended his dismissal. Also, the decision maker whose good faith is in question (the school board) is a step removed from the official (the principal) who ordinarily supervises the probationary teacher and recommends termination, *cf., Goldberg v. Kelly,* 399 US 254, 271, 90 S Ct 1011, 25 L Ed 2d 287 (1970); *Morrissey v. Brewer,* 408 US at 486-489. Taken together, these procedures were adequate to guard against a bad faith dismissal. Plaintiff had two opportunities to rebut the charges against him, before a decision maker a step removed from the recommendation and at least one opportunity to confront the person who made charges and who recommended his dismissal, and the regularity of the

proceeding was subject to judicial review.[10] Given the nature of plaintiff's property interest, these procedures were sufficient to protect it. *See, Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976).[11]

Plaintiff's complaint alleged a number of specific procedures to which he was entitled, but on appeal he relies most heavily on his right to an impartial decision-maker. Plaintiff claims he was denied this right, but his complaint does not disclose the basis of this contention. The fact that the board members made the initial decision to dismiss plaintiff does not, without more, render their subsequent decision impermissibly biased. *Vanelli v. Reynolds School District No. 7, supra,* n 10; *see also, Hortonville Dist. v. Hortonville Ed. Assn.,* 426 US 482, 496-497, 96 S Ct 2308, 49 L Ed 2d 1 (1976) (state school board's prior involvement in a labor dispute with striking teachers did not prevent it from deciding whether those teachers should be dismissed as a result of the unlawful strike); *Withrow v. Larkin,* 421 US 35, 47, 55, 95 S Ct 1456, 43 L Ed 2d 712 (1975) (state medical examining board may adjudicate the merits of a disciplinary action in which the board itself had investigated and filed charges). Beyond that, plaintiff has not alleged actual bias in the board members.

---

[10] The record does not indicate whether the principal was present at the board meeting where the decision to dismiss plaintiff was made.

[11] In these cases, pre- and post-dismissal procedures must be viewed together to determine whether plaintiff's due process rights were violated. In *Tupper,* this court considered the adequacy of procedures used to dismiss a nonprobationary state employee. The employee was dismissed without notice, and was then given a "full post-termination hearing" before the Employment Relations Board. The court held that in addition to this post-termination hearing, plaintiff was entitled before being dismissed to notice of the charges against him and of the sanctions being considered, and an opportunity to refute those charges either orally or in writing before someone who was authorized to make the final decision.

In its analysis of what due process required, the *Tupper* court viewed the procedures employed both prior to and following the dismissal to determine if, taken as a whole, they adequately protected plaintiff's property interest. The pre-termination procedures the court required were sufficient because of the extensive post-termination procedures. That notion was implicit in our statement that "in addition to his full post-termination hearing Tupper was entitled to [the procedural safeguards listed above] prior to dismissal." *Tupper,* 276 Or at 665.

We recognize that the procedures to which Tupper was entitled were more extensive than those employed here, but Tupper's property interest was more significant. Unlike plaintiff here, he could only be dismissed for "cause."

The trial court dismissed plaintiff's § 1983 claim for failure to state facts constituting a claim for relief. The dismissal was incorrect because plaintiff's complaint alleged he was fired without adequate prior notice of the charges or the sanctions being considered. None of the pleadings alleged that plaintiff had received notice of the charges and of the proposed sanction. Had plaintiff been dismissed with no notice, he would have a cause of action under § 1983. Therefore, the pleadings stated a claim for relief and the dismissal was error.

The motion for summary judgment was based on the stipulated facts. Because the agreed facts establish that the procedures by which plaintiff was dismissed satisfied the requirements of the Due Process Clause, defendant's motion for summary judgment should have been granted. The judgment is modified in this respect to reflect summary judgment for defendants on the § 1983 claim. The circuit court is directed to enter a new judgment consistent with this holding.

The decision of the Court of Appeals is affirmed as modified.