Argued and submitted November 2, 1990, affirmed April 24, reconsideration denied June 12, petition for review denied August 6, 1991 (312 Or 16)

Diane MACHUNZE,
*Appellant,*

*v.*

CHEMEKETA COMMUNITY COLLEGE
and the Board of Education of
Chemeketa Community College,
*Respondents.*

(88C-11390; CA A62603)

810 P2d 406

Eric Yandell, Salem, argued the cause for appellant. With him on the briefs was Heltzel, Upjohn, Shaw, Williams, Yandell & Pearsall, Salem.

Thomas S. Moore, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff had been an employee of Chemeketa Community College under successive one-year contracts[1] since 1985, in a position that was exempt from collective bargaining. In the fall of 1987, she was evaluated and was told that there were problems with her work performance. In January, 1988, her supervisor gave her a work plan that listed areas in which she needed to improve. In early February, the supervisor informed her that she would recommend that her contract not be renewed for the next academic year. Shortly thereafter, pursuant to a procedure applicable to exempt employees, plaintiff filed a complaint with the president about the evaluation process. On March 4, she was notified by the college personnel officer that her contract would not be renewed for the 1988-89 school year; she filed additional complaints concerning how the college had reached that decision. On June 23, after a hearing by the president on her complaints, he responded in a letter entitled "Grievance Reply," in which he found that the supervisor had good reasons for the non-renewal recommendation and denied the other complaints. On June 27, the college's Board of Education approved the president's recommendation on several personnel actions, including plaintiff's separation from employment.

Plaintiff sought a writ of review from the Board's decision not to renew her contract. She also sued defendants for breach of contract and specific performance. The trial court dismissed her writ of review petition as untimely and dismissed her contract claim for failure to state a claim on which relief could be granted. ORCP 21A(8) and (9). The trial court also held that, "as to the quasi-judicial functions of the College President, Writ of Review is an exclusive remedy." She filed an amended complaint, amending her contract claim and adding a single claim for violations of her Fourteenth Amendment due process rights and 42 USC § 1983.[2] On defendants' motion, the trial court struck the contract claim for the same reasons that it had earlier dismissed it and dismissed the

---

[1] There were two categories of exempt employees: probationary and non-probationary. A probationary employee's contract could be discontinued at any time, if work performance was not satisfactory. Plaintiff had become a non-probationary employee.

[2] Plaintiff does not plead the Fourteenth Amendment and section 1983 claims separately, and we treat them as one claim.

constitutional and section 1983 claim for failure to state a claim.

Plaintiff first assigns error to the trial court's holding that the petition for a writ of review was not timely filed. *See* ORS 34.030. She contends that the petition was filed timely, because she filed it within 60 days after the Board approved her separation from employment. She argues that the decision not to renew terminated her employment and was a quasi-judicial decision under the criteria in *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 602-03, 601 P2d 769 (1979),[3] and that, because the Board's action was the final step in the decision-making process, the time within which to seek a writ began to run only after that decision.[4] She points out that the contract[5] expressly conditioned renewal on satisfactory work performance and that the Administrative Employee Handbook for Exempt Employees (Handbook) said that her performance would be evaluated every year. She claims that the evaluation process made the decision whether to renew her contract quasi-judicial, because the college necessarily had to take the evaluation into consideration, which meant that preexisting criteria were to be applied in determining whether to renew. *See Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm., supra,* 287 Or at 602-03. She also argues broadly that the decision to renew or not was, by its nature, quasi-judicial, because it had a specific effect on her.

Defendants argue that the Board action was not

---

[3] The basic criteria are that an adjudicatory process be used to reach a decision that applies preexisting criteria to concrete facts and is directed at a closely circumscribed factual situation or small number of persons. 287 Or at 602-03.

[4] Plaintiff points out that the college conceded that the president's decision *in the complaint procedure* was quasi-judicial; therefore, she contends, the Board's decision, which carried out the President's decision, being the last step, was also quasi-judicial. *See Koch v. City of Portland,* 306 Or 444, 760 P2d 252 (1988). However, plaintiff fails to distinguish the President's decision in the complaint context from the previous decision not to renew her contract, made before March and about which she received notice on March 4, but which she contends was not final until the Board voted in June. On appeal, she seeks review of the decision not to renew her contract, not the president's decision on her complaints.

[5] The petition alleged:

"On or about October 16, 1985, petitioner entered into a written contract with respondents for employment as an exempt educational specialist. A copy of the contract is attached as Exhibit A and is by reference incorporated in the Petition. The contract conditioned her continued employment on her satisfactory job performance and was renewed in 1986 and 1987."

quasi-judicial, because neither the contract, the Handbook nor any statute required or allowed the Board to take any action regarding nonrenewal of exempt employees' contracts. In fact, they maintain, the Handbook only provides for a quasi-judicial Board review of employment *termination* actions, as distinct from nonrenewals. Defendants assert that the complaint procedure was plaintiff's only way to challenge the decision not to renew her contract and that the President's decision on her complaints was final. They contend the Board merely rubber stamped the President's findings on her complaint, which did not make its action quasi-judicial. There being no contract or statutory right to a hearing in the event of a decision not to renew a contract, the decision not to renew is not challengeable, according to defendants, even under common law master-servant principles.

■     The trial court dismissed the petition under ORCP 21A(9). We review only the allegations of the petition. *See Dotson v. Smith,* 307 Or 132, 137, 764 P2d 540 (1988). Plaintiff alleged that her original contract "conditioned her employment on her satisfactory job performance and was renewed" for the next two years. However, the contract incorporated by reference into the petition does not say what she alleged that it said. It says only that "continuation within *this assignment*" (emphasis supplied) is conditioned on her work performance. In context, the contract could refer only to the 1985-86 school year. She also alleged that the 1985-86 contract was renewed the next two years. The Handbook, which is also incorporated by reference into the petition, provides that first-year, probationary employees have to perform satisfactorily to keep their jobs and that non-probationary employees receive one-year contracts, which can only be *terminated* for cause or due to institutional financial circumstances. Once she was no longer a probationary employee, her 1985-86 contract's terms no longer applied to her. Plaintiff did not plead any facts showing that she had a right to a hearing derived from any source other than the original contract and the Handbook. Although she alleged that her contract was *terminated,* an act that would have entitled her to a hearing by the Board, she did not allege that she was not allowed to complete her then current 1987-88 contract. So, that contract was not terminated; it expired.

■ ■     The question remains whether the decision not to

renew, in and of itself, was quasi-judicial. *If* the March decision not to renew was quasi-judicial, the Board's decision to accept the president's recommendation would have been quasi-judicial. *See Koch v. City of Portland, supra* n 3. However, there is no statutory requirement for a board of a community college to provide a "due process-type proceeding" for a nonrenewal decision, *see Henthorn v. Grand Prairie School Dist.,* 287 Or 683, 601 P2d 1243 (1979), and, as discussed above, neither the contract nor the Handbook created a right to a quasi-judicial proceeding. Plaintiff did not plead that it is derived from any other source. The Handbook specified that she had no right to expect that her contract would be renewed, and the college had no duty to provide a hearing on nonrenewal. *Cf. Cole v. Chemeketa Community College,* 58 Or App 77, 83, 647 P2d 935, *rev den* 293 Or 521 (1982) (terminated teacher entitled to hearing pursuant to contract). The Board's acceptance of the president's "recommendation" not to renew the contract, which had been decided in early March, was not quasi-judicial, and the trial court did not err in dismissing the writ.

Plaintiff also assigns error to the trial court's dismissal of her breach of contract claim. We treat as true the allegations, as well as any inferences favorable to plaintiff that could be drawn. *Oksenholt v. Lederle Laboratories,* 294 Or 213, 215, 656 P2d 293 (1982). Part of plaintiff's contract claim is premised on her interpretation that her contract conditioned continued employment only on satisfactory work performance. She argues that the express language in the original 1985 contract, coupled with the evaluation process, necessarily resulted in the college's considering the results of the evaluation in determining whether to renew her contract. She claims that, because she had received good performance evaluations in previous years and her contract had been renewed, that conduct manifested an implied agreement to renew, unless she had received an evaluation that her performance was not satisfactory, which she never did. *See Perkins v. Standard Oil Co.,* 235 Or 7, 14-16, 383 P2d 107 (1963).

Defendants argue that the original contract for the 1985-86 school year is irrelevant and was superseded by the subsequent contracts, which do not have the language on which plaintiff relies. They contend that, even if the 1985 contract were still relevant, the Handbook expressly provided

that, after the first, *probationary* year, exempt employees will have, at most, one-year contracts with no expectation of automatic renewal. That is, after completion of her first year, the provision about work performance evaluation on which she relies no longer applied to plaintiff. They also argue that her argument points only to her own subjective personal perception that she would be employed as long as she did her work satisfactorily. That perception, they claim, is contrary to the clear language of her contract and the Handbook.

■ The contract and the Handbook, including the 1985 contract, are not ambiguous and do not support plaintiff's allegation that her employment was conditioned only on satisfactory evaluations. She has not alleged any facts from which an inference could be drawn that her employment was assured as long as she did satisfactory work. The fact that her performance was evaluated every year does not, *ipso facto,* mean that a subsequent renewal was the result of the evaluation. She has not pleaded that defendants made oral representations or had rules that work performance was a condition of renewal. No inference can fairly be drawn that the college impliedly conditioned her continued employment only on satisfactory work performance.

■ Plaintiff also alleged that defendants acted in bad faith in deciding not to renew her contract and in conducting the last evaluation process. Even assuming the truth of those allegations, a contract remedy was not available. In *Maddox v. Clac. Co. Sch. Dist. No. 25,* 293 Or 27, 643 P2d 1253 (1982), a probationary elementary school teacher brought a breach of contract claim and a section 1983 claim after he was terminated one month into the school year. The court observed that the contract contained purely contractual rights as well as rights granted by statute. It said that, if the interests of the parties exist by virtue of a contract, a contract remedy may be available but, because the plaintiff's rights to challenge his termination were statutory and he had received a hearing on that matter, his termination was only challengeable by a writ of review; he had no contract remedy. In *Cole v. Chemeketa Community College, supra,* we held that a management employee, whose employment was defined by a contract and a handbook, could not have a contract remedy because, under the handbook, the challenged decision was made according to a particular procedure and, therefore, was quasi-judicial. We

concluded that there was no analytical difference between what the board did under the handbook and what the board in *Maddox* did under a statute. However, in both cases, the plaintiffs' contracts had been terminated for misconduct, and both had received some form of hearing, which the schools were obliged to provide pursuant to applicable procedures.

■ This case presents a different situation. Although plaintiff was not required to file an internal complaint pursuant to the Handbook, she did. That makes this case essentially the same as *Spada v. Port of Portland,* 55 Or App 148, 637 P2d 229 (1981), where the plaintiffs brought a contract action to recover the cost of removal of nursery stock from property purchased by the Port. Before filing an action in circuit court, the plaintiffs submitted the issue for a decision by the Port's executive director. There was no statutory requirement to submit the claim to an administrative hearing before the agency and, at the time of the proceedings in issue, there was no statutory provision for judicial review of the director's decision. In the later contract action, the plaintiffs sought to enforce the defendant's unilateral promise to pay a certain amount, the same issue that had been decided by the director. We held that, if the plaintiffs had not elected to use the administrative process, they might have had a right to bring an independent action for breach of contract. However, their having chosen the administrative hearing procedure, review of that decision could only be by writ of review. 55 Or App at 154. Like the plaintiffs in *Spada,* plaintiff here filed an internal complaint about the evaluation process and obtained a final decision by the president. That decision was quasi-judicial,[6] and review could be had only by writ of review.

Plaintiff's last assignment is that her claim under the Fourteenth Amendment Due Process Clause and section 1983 was improperly dismissed. She argues that she adequately alleged a property right in continued employment by virtue of her contract, as evidenced by her evaluation under performance-related criteria and by virtue of defendants' practice of renewing her and other exempt employees' contracts if their job performances had been satisfactory. *See Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Perry*

---

[6] Defendants have conceded this point throughout the proceedings in the trial court and on appeal. We do not need to decide the matter.

*v. Sindermann,* 408 US 593, 92 S Ct 2694, 33 L Ed 2d 570 (1972). She also argues that her due process rights were violated by defendants' failure to disclose the evidence on which they relied in deciding not to renew her contract, failure to give her proper notice of the reasons for nonrenewal and failure to afford her a pre- or post-termination hearing.

■■ An employee who has no job tenure rights "may be constitutionally terminated with no prior notice or hearing" unless a statute, rule or contract confers a "property interest." *Trivoli v. Mult. Co. Rural Fire Protection,* 74 Or App 550, 554, 703 P2d 285 (1985); *see also Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 167-68, 511 P2d 854, *rev den* (1973), *cert den* 417 US 919 (1974). Plaintiff's contract expressly provided that she had no expectation of automatic renewal. The fact that performance evaluations were done is an insufficient basis, by itself, for a claim of violation of due process.

Affirmed.